Youssef Hammoud
yh@lawhammoud.com
*Attorney for Plaintiff*
CA Bar No. 321934
Hammoud Law, P.C.
206 W. 4th Street, 3rd Floor
Santa Ana, CA 92701
T: (949) 301-9692
F: (949) 301-9693

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORIA
## WESTERN DIVISION

|  |  |
|---|---|
| SHAWN WILLIAMS, | **Case No.:** |
| Plaintiff, |  |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| SAFERENT SOLUTIONS, LLC, CONTEMPORARY INFORMATION CORPORATION, and EXPERIAN INFORMATION SOLUTIONS, INC., |  |
| Defendants. |  |

Plaintiff Shawn Williams ("Plaintiff") brings this action on an individual basis, seeking statutory and other damages against defendant SafeRent Solutions, LLC ("SafeRent") defendant Contemporary Information Corporation ("CIC"); and defendant Experian Information Solutions, Inc. ("Experian") (collectively,

1

"Defendants") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

## **PRELIMINARY STATEMENT**

1.      This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

2.      Defendants have produced and sold consumer reports concerning Plaintiff's background that wrongfully reported that Plaintiff was a convicted pedophile.

3.      As a result of Defendants' violations of the FCRA, Plaintiff was harmed by, without limitation, being denied housing and suffering immense emotional distress and anguish.

## **PARTIES**

4.      Plaintiff is a natural person that resides in Los Angeles County, California and qualifies as a "consumer" as defined and protected by the FCRA.

5.      Defendant SafeRent is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f).  SafeRent is authorized to do business in this state, maintains its headquarters at 3001 Hackberry Road, Irving, Texas 75063, regularly conducts business in this judicial district, and can be served with process by way of its registered agent Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE, 19808.

6.      Defendant CIC is a corporation incorporated in California and maintains a principal place of business located at 42913 Capital Drive, Unit 101, Lancaster, California 93535. CIC can be served with process by way of its Registered Agent, Edward Siegler, located at 16633 Ventura Boulevard, Suite 900, Encino, California 91436.

7.      Defendant Experian is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f).  Experian is authorized to do business in this state, regularly conducts business in this judicial district, and can be served at its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred in this district.

## STATEMENT OF FACTS

**a.      The FCRA**

10.      The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly

3

referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

11.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies.

12.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

**b.      Substantive Allegations**

13.     During the beginning of the Covid-19 pandemic, Plaintiff, like many other consumers, applied for and began receiving unemployment benefit payments.

14.     In addition, during the year 2020, Plaintiff moved from New York to California due to circumstances related to Covid-19.

15.     Plaintiff's plan was to benefit from the unemployment payments while applying for a job and finding a place to live in California.

4

16.     Plaintiff's family friend, located in Los Angeles, generously offered Plaintiff a temporary place to stay while Plaintiff got her footing, which would afford Plaintiff the ability to focus on applying for a job and a place to rent.

17.     In or about February of 2021, Plaintiff suddenly stopped receiving her unemployment payments.

18.     Plaintiff called the Department of Labor and discovered that, due to some internal records error, the Department of Labor was under the impression that Plaintiff was incarcerated in 2019.

19.     This was incorrect, as Plaintiff was never charged for a crime, let alone incarcerated.

20.     Over the next period of months, Plaintiff made hundreds of calls to the Department of Labor in an attempt to correct the error, with no luck.

21.     Plaintiff contacted her congressman and local news outlets, but, no matter how hard Plaintiff tried, she was unable to resolve the issue.

22.     Many months later, with the assistance of a well-connected non-profit organization, Plaintiff was finally able to correct the issue, and Plaintiff's unemployment payments were re-instated.

23.     Plaintiff's exhaustive attempts to correct the unemployment issue took up most of Plaintiff's waking hours during the year 2021.

24.     Throughout this time, Plaintiff was unable to focus on finding a job or a place to live and was forced to remain at her family friend.

25.     Aside from the fact that Plaintiff had no time to search for a job or a place to rent, Plaintiff was concerned that if she submitted a job or rental application, the Department of Labor's inaccurate records would somehow disrupt her chances of qualifying and having her application accepted.

26.     Plaintiff was aware that she had far overstayed her welcome at her family friend's house, but Plaintiff had no other choice but to remain while she resolved the unemployment issue.

27.     Once Plaintiff resolved the unemployment issue, Plaintiff was able to focus on searching and applying for a place to live.

28.     In January of 2022, Plaintiff located a home for rent in Los Angeles that met Plaintiff's needs and submitted an application to rent the home.

29.     As part of the application process, Plaintiff provided her social security number and consented to a background check, which she paid for out of her own pocket.

30.     On or about February 1, 2022, Plaintiff received a phone call from the landlord of the property for which she had submitted an application, who informed her that her there was no way she could rent the home, as her background consumer

report was reporting that she was a convicted felon, and even worse, that she was a pedophile.

31.   Plaintiff was shocked and humiliated.

32.   After fighting back her tears, Plaintiff began to explain to the landlord all about her issues with the incorrect records maintained by the Department of Labor, and that, despite the Department of Labor's inaccurate records, she was never incarcerated in 2019.

33.   In response, the landlord stated that the background consumer report was reporting a different record, as it was reported she was convicted and sentenced in 2008.

34.   Feeling defeated, Plaintiff hung up the phone.

35.   On or about that same day, the landlord of the location for which she had applied sent her two snapshots of the subject reporting.

36.   The snapshots demonstrated that, indeed, it appeared a consumer reporting agency was reporting that Plaintiff was a convicted pedophile.

37.   Plaintiff attempted to reach out to the landlord and plead with her to send Plaintiff the full report.

38.   At first, the landlord did not respond to Plaintiff's communications, which made Plaintiff believe that the landlord was avoiding her out of disgust.

39.     Finally, on or about February 9, 2022, the landlord sent Plaintiff a copy of the full consumer background report upon which she based her denial.

40.     The background consumer report that Plaintiff received from the landlord was titled "Multi-State Criminal Report," and demonstrated that defendant SafeRent had processed the report on January 31, 2022.

41.     The January 31 SafeRent background consumer report (the "SafeRent Consumer Report") reported Plaintiff's complete name (*i.e.*, Shawn Williams), as well as the last four digits of Plaintiff's social security number.

42.     Just below Plaintiff's personal information, in a section titled "Criminal Court Action 1 of 1," the SafeRent Consumer Report reported a record allegedly obtained from the New York Department of Corrections related to a person with the full name of "Shawn P Williams" and the gender identifier of "Sex: M."

43.     The report then listed the "Case Details" for the alleged Criminal Court Action, including the following information: (i) Jurisdiction: NY; (ii) Reporting Agency: NYDOC; (iii) Case Number: N/A; and (iv) Other Tracking: Source ID: NY_DEPT_OF_CORRECTIONS   DC#:   08B2383   Court   Name:   NIAGARA COUNTY INST NAME: COLLINS.

44.     The SafeRent Consumer Report then listed two separate alleged offenses.

45.     The first offense reported contained the following information, without limitation: (i) Offense: COURSE SEX CONDUCT-CHILD 1ST; (ii) Offense Severity: Felony; (iii) Disposition: CONVICTED; (iv) Sentence: 196 Month(s); and (v) Sentence Date: 07/25/2008.

46.     The second offense reported contained the following information, without limitation: (i) Offense: SEXUAL ABUSE 1ST; (ii) Offense Severity: Felony; (iii) Disposition: CONVICTED; and (iv) Sentence Date: 07/25/2008.

47.     The SafeRent Consumer Report then reported a section titled "Additional Names and DOB Used in Multi-State Plus Search."

48.     Under this section, the SafeRent Consumer Report stated, without limitation, the following: "Input SSN validation: SSN IS PRESUMED TO BE VALID."

49.     As demonstrated by this information, the SafeRent Consumer Report ***falsely*** reported that Plaintiff was charged, convicted of, and sentenced to 196 months in prison for the felony of Course of Sexual Conduct Against a Child in the First Degree, which, pursuant to New York Penal Code § 130.75, means that Plaintiff, who was over eighteen years of age, was found guilty of committing two or more acts of sexual conduct with a child less than thirteen years old over a period of time not less than three months.

50.     Further, the SafeRent Consumer Report _**falsely**_ reported that Plaintiff was charged, convicted of, and sentenced for committing the felony of Sexual Abuse in the First Degree, which, pursuant to New York Penal Code § 130.65, means that Plaintiff was found guilty of subjecting another person to sexual contact (i) by forcible compulsion; or (ii) against a victim that was incapable of consent by reason of being physically helpless; or (iii) against a victim that was less than eleven years old; or (iv) against a victim less than thirteen years old if Plaintiff was twenty-one years old or older at the time.

51.     The SafeRent Consumer Report reported these criminal records on Plaintiff's background consumer report despite the fact that SafeRent had Plaintiff's social security number and purported to use the social security number to verify the match of the criminal records to Plaintiff with the presumption that the social security number was valid.

52.     The SafeRent Consumer Report reported these criminal records as if they were associated with Plaintiff despite the additional fact that, as demonstrated by the criminal records themselves, the actual offender to whom these records belong was male (while Plaintiff is female) with the name "Shawn P Williams" (while Plaintiff's name is "Shawn Williams").

53.     Further, SafeRent knew or should have known that the actual offender to whom these records belong was still incarcerated, as (i) SafeRent reported that the

offender was sentenced to serve 196 months in jail on July 25, 2008 (meaning the offender would not be scheduled to be released until November 25, 2024), and (ii) publicly accessible records of the New York Department of Corrections clearly demonstrate that the actual offender to whom these records belong is still incarcerated.

54.     Plaintiff, who was never charged with any crime nor involved in criminal proceedings in any way, was absolutely horrified, sickened, and humiliated by the false contents of the SafeRent Consumer Report.

55.     Despite being emotionally shattered by the SafeRent reporting, Plaintiff was desperate to find a place to live, as Plaintiff needed to move out of her family friend's house.

56.     Because the criminal records were so outlandish, Plaintiff thought the SafeRent reporting must have been a fluke and that there was no way the records could be reported in connection with Plaintiff again.

57.     Accordingly, on or about February 10, 2022, Plaintiff submitted a reusable rental application to the website Zillow.com, which would allow her to submit one rental application to be reused a number of times.

58.     Thereafter, Plaintiff received a copy of a background consumer report produced by CIC in response to Plaintiff's Zillow application which was dated February 10, 2022 (the "CIC Consumer Report").

59.   The CIC Consumer Report reported Plaintiff's full name, Plaintiff's date of birth, and the first five digits of Plaintiff's social security number.

60.   The CIC Consumer Report indicated that it obtained the background information reported in the CIC Consumer Report from Experian.

61.   The CIC Consumer Report further indicated that the report was requested by and delivered to Ernst & Haas Management Co.

62.   Under a section titled "FILE IDENTIFICATION AND FRAUD SEARCH," the CIC Consumer Report stated, without limitation, the following: "Source Provided By: Experian" and "SSN Match: OK OR SIMILAR."

63.   Then, to Plaintiff's absolute horror, the CIC Consumer Report also falsely reported the criminal records as if they were associated with Plaintiff.

64.   In particular, under a section titled "Nationwide Criminal, Sex Offender, & Interpol Scan of Best Available Databases," the CIC Consumer Report reported a record that contained, without limitation, the following information: (i) Full Name: SHAWN P WILLIAMS; (iii) Category: CRIMINAL; (iv) Source: NY DEPARTMENT OF CORRECTIONS; (iv) Sex: MALE (v) Race: WHITE; (vi) Case Number: [blank]; and (vii) State: NY.

65.   The CIC Consumer Report then reported, without limitation, the following information: (i) Offense – Case Type: FELONY CLASS C; (ii) Description: COURSE SEX CONDUCT-CHILD 1ST; (iii) Disposition:

12

DISPOSITION NOT PROVIDED BY SOURCE; (iv) Offense Code: 1914; (v) Court: COUNTY; (vi) Commitment Location: ATTICA GEN; (vii) Commitment County: NIAGRA; and (viii) Release Date: 05/29/2022.

66.   The CIC Consumer Report then reported, without limitation, the following information: (i) Offense – Case Type: FELONY CLASS E; (ii) Description: SEXUAL ABUSE 1ST; (iii) Disposition: DISPOSITION NOT PROVIDED BY SOURCE; (iv) Offense Code: 1905; (v) Court: COUNTY; (vi) Commitment Location: ATTICA GEN; (vii) Commitment County: NIAGRA; and (vii) Release Date: 05/29/2022.

67.   As demonstrated by this information, the CIC Consumer Report **_falsely_** reported that Plaintiff was charged with and sentenced to serve time in the Attica Correctional Facility for committing the felony of Course of Sexual Conduct Against a Child in the First Degree, which, pursuant to New York Penal Code § 130.75, means that Plaintiff, who was over eighteen years of age, was found guilty of committing two or more acts of sexual conduct with a child less than thirteen years old over a period of time not less than three months.

68.   Further, the CIC Consumer Report **_falsely_** reported that Plaintiff was charged with and sentenced to serve time in Attica Correctional Facility for committing the felony of Sexual Abuse in the First Degree, which, pursuant to New York Penal Code § 130.65, means that Plaintiff was found guilty of subjecting

another person to sexual contact (i) by forcible compulsion; or (ii) against a victim that was incapable of consent by reason of being physically helpless; or (iii) against a victim that was less than eleven years old; or (iv) against a victim less than thirteen years old if Plaintiff was twenty-one years old or older at the time.

69.     Upon information and belief, and based on the information available on the face of the CIC Consumer Report, Experian provided the information related to these records to CIC.

70.     Both Experian and CIC reported these criminal records concerning Plaintiff despite the fact that Experian and CIC had Plaintiff's social security number and purported to use the social security number to verify the match of the criminal records to Plaintiff.

71.     Both Experian and CIC reported these criminal records as if they were associated with Plaintiff despite the additional fact that, as demonstrated by the criminal records themselves, the actual offender to whom these records belong was male (while Plaintiff is female) with the name "Shawn P Williams" (while Plaintiff's name is "Shawn Williams").

72.     In addition, both Experian and CIC knew or should have known that the actual offender to whom these records belong was still incarcerated, as (i) they explicitly reported a release date of May 29, 2022, and (ii) publicly accessible

records of the New York Department of Corrections clearly demonstrate that the actual offender to whom these records belong is still incarcerated.

73.     Finally, under a section titled "CREDIT SUMMARY AND ACCOUNT DETAILS," the CIC Consumer Report reported information concerning Plaintiff's financial credit history, including, without limitation, that" (i) Plaintiff had a total number of 11 tradelines on her credit history, all of which were positive; (ii) that Plaintiff had zero negative accounts; (iii) that Plaintiff had zero late payments in the last 24 months; (iv) that Plaintiff had zero past due accounts; (v) that Plaintiff had zero reported collection accounts, outstanding or otherwise; and (vi) that Plaintiff's FICO V9 credit score above 700.

74.     However, the fact that the CIC Consumer Report had reflected that Plaintiff's credit history was more than exemplary was no consolation to Plaintiff.

75.     Once again, Plaintiff was horrified, sickened, and humiliated by the false contents of the CIC Consumer Report reported by both CIC and Experian.

76.     Defendant SafeRent's reporting has resulted in Plaintiff being denied a rental for which she would have otherwise qualified, especially in light of Plaintiff's strong financial credit history.

77.     While extremely harmful to Plaintiff, the rental application denial is, however, just the tip of the iceberg.

78.    Defendants' reporting has destroyed Plaintiff emotionally and has completely hindered Plaintiff's ability to advance in life, which has caused and is causing significant financial damage to Plaintiff.

79.    Plaintiff is humiliated that third parties were falsely informed that Plaintiff was charged with, found guilty of, and sentenced to time in prison for such horrific acts.

80.    While Plaintiff desperately needs to move out of her family friend's house, Plaintiff cannot bring herself to submit a rental application, as she is terrified of ever having these criminal records associated with her again.

81.    Plaintiff's inability to move from her family friend's house is causing Plaintiff further emotional distress, as Plaintiff is well aware that she has far overstayed her welcome.

82.    Further, despite Plaintiff desperately needing employment, Plaintiff cannot bring herself to submit a job application, as she is terrified of ever having these criminal records associated with her again.

83.    As a result of Defendants' reporting, Plaintiff is constantly panic stricken and suffers from anxiety attacks.

84.    Defendants' false reporting has caused Plaintiff to relive and suffer through her experience of attempting, without success, to resolve the circumstances

16

relating to the Department of Labor's inaccurate records indicating Plaintiff was incarcerated in 2019.

85.    Further, Plaintiff has suffered from a significant loss of sleep, as Plaintiff constantly wakes from sleep in a cold sweat with heart palpitations due to her concerns of Defendants' reporting and her fear of being homeless.

86.    As demonstrated by Defendants' reporting, Defendants fail to maintain and employ reasonable procedures to assure maximal accuracy of the consumer information they provide to third parties.

87.    Defendants failed to take the necessary measures to verify the accuracy of the background and/or criminal history information they obtained and reported concerning Plaintiff.

88.    Defendants knew or should have known the records they were reporting concerning Plaintiff were inaccurate, as Defendants simultaneously reported information concerning Plaintiff that demonstrated the criminal records were not associated with Plaintiff.

89.    Further, Defendants' reporting represented that they had matched Plaintiff's social security number and personal identifier(s) with the criminal records, when that was clearly not true.

90.    Finally, Defendants had notice that the criminal records were not correctly associated with Plaintiff, as they knew or should have known that the actual

offender to whom these records belong was still incarcerated, and incarcerated individuals do not submit rental applications.

91.     Defendants know their services are used to make significant consumer decisions concerning housing.

92.     Nevertheless, instead of employing reasonable procedures as required by the FCRA, Defendants, upon information and belief, blindly collect information in an unreliable manner without verifying the information it collects.

93.     Alternatively, Defendants, upon information and belief, blindly collect information in an unreliable manner from unreliable third-party vendors to repackage and sell in their own consumer reports and/or report to other parties.

94.     Upon information and belief, Defendants buy consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is maximally accurate.

95.     Upon information and belief, none of Defendants' third-party vendors warrant the accuracy of the information they sell.

96.     Upon information and belief, Defendants do not independently investigate the information they buy from third-party vendors before reporting such information.

97.     Upon information and belief, Defendants do not exercise the due diligence necessary to ensure the reliability of their third-party vendors, nor do they

conduct periodic quality assurance audits to ensure that they are receiving reliable information from their third-party vendors.

98.    At common law, Defendants' conduct would give rise to causes of action based on defamation and invasion of privacy.

99.    Upon information and belief, Defendants knowingly and willfully maintains deficient procedures because employing reasonable procedures to ensure they meet their duties under the FCRA would reduce their profits.

100.   Upon information and belief, Defendants have been sued under the FCRA in the past.

101.   Therefore, Defendants had actual notice that their procedures often result in violations of the FCRA.

102.   Despite such notice, Defendants recklessly, knowingly and/or willingly failed and continue to fail to employ procedures that assure they meet their duties under the FCRA.

103.   The injuries suffered by Plaintiff as a direct result of Defendants' violations, as alleged herein, are the type of injuries that the FCRA was enacted to prevent.

104.   Defendants' violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

105.   Alternatively, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

106.   In any event, Defendants are liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION
### COUNT I
**Against SafeRent, CIC, and Experian for Violations of the FCRA, 15 U.S.C. § 1681e(b)**

107.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

108.   The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

109.   Defendants violated § 1681e(b) because they failed to follow reasonable procedures to ensure the maximum possible accuracy of the information they attributed to Plaintiff.

110.   Specifically, Defendants willfully, intentionally, recklessly, and negligently violated § 1681e(b) by inaccurately reporting criminal records on Plaintiff's consumer report as if they were correctly associated with Plaintiff that falsely reflected that Plaintiff was a convicted pedophile, as further alleged herein.

111.   Defendants' violations were a direct and proximate cause of Plaintiff's injuries, as alleged herein.   Defendants are therefore liable to Plaintiff for their negligent and willful failures to follow reasonable policies and procedures.

112.   As a result of Defendants' violations of 15 U.S.C. §§ 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

i.      Awarding Plaintiff statutory money damages, actual damages and punitive damages as allowed by 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii.     Awarding punitive damages as allowed by Cal .Civ. Code § 3294;

iii.    Awarding attorney's fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iv.     Awarding such other relief as to this Court may seem just and proper.

21

**JURY DEMAND**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: <u>February 28, 2022</u>

*/s/ Youssef Hammoud*

Youssef Hammoud
CA Bar No. 321934
Hammoud Law, P.C.
206 W. 4th Street, 3rd Floor
Santa Ana, CA 92701
T: (949) 301-9692
F: (949) 301-9693
yh@lawhammoud.com

*Attorney for Plaintiff*